**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

MARK A. AUCOIN                                      CIVIL ACTION NO.08-CV-0363

VS.                                                            JUDGE DOHERTY

MICHAEL J. ASTRUE, Commissioner          MAGISTRATE JUDGE METHVIN
Social Security Administration

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **AFFIRMED.**

### *Background*

On the date of his administrative hearing, September 11, 2006, Aucoin was 44 years old.

He applied for disability benefits on September 9, 2004, alleging disability beginning August 23,

2004 due to back, knee and ankle pain.  Aucoin is insured only through December 31, 2004 and

thus must establish disability on or before that date to be entitled to disability insurance benefits.[1]

Aucoin has a 4th-5th grade education.  He testified that he made F's in school and cannot read or

write very well.[2]  He worked as a welder for approximately 30 years.[3]  He injured his back in a

work-related accident, and underwent a discectomy on August 23, 2004.  Aucoin complains of

continued pain from the back injury and a subsequent ankle injury.

Following the hearing, the ALJ  determined that Aucoin was not disabled.  The Appeals

Council denied review and Aucoin timely filed this appeal.

---

[1] Tr. 16.

[2] Tr.

[3] Tr. 290-1.

### *Standard of Review and Procedure for Analysis of Impairments*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).[4] In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992).[5]

In the instant case, the ALJ determined that Aucoin's back pain, knee pain, and depression are a severe combination of impairments (Tr.3). The ALJ concluded that Aucoin's complaints of a limited lifestyle due to pain are not entirely credible. After consulting a vocational expert at the hearing, the ALJ concluded that Aucoin had the residual functional capacity (RFC) to perform a number of light jobs in the economy, including cashier, inspectors/testers; production worker.

---

[4] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

[5] The procedure is as follows:
1.  If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.
2.  A person who does not have a "severe impairment" will not be found to be disabled.
3.  A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
4.  If a person can still perform his past work, he is not disabled.
5.  If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Issue Presented*

Aucoin has not set forth a specific Statement of Errors as required by the Scheduling

Order. The issue presented by his memorandum is whether the ALJ's finding that Aucoin's pain

is not disabling is supported by substantial evidence.

*Findings and Conclusion*

## Can Aucoin maintain employment?

Aucoin argues that the ALJ erred in his credibility determination, and that the

hypothetical posed to the VE did not contain all of his limitations. Aucoin asserts that

considering his limitations, while he may be able to get a job, he cannot maintain it.

The court's function is to determine whether substantial evidence supports the ALJ's

decision. A finding of no substantial evidence is appropriate only if no credible evidentiary

choices or medical findings exist to support the decision. Johnson v. Bowen, 864 F.2d 340, 343

(5th Cir.1988). Here, the medical evidence supports the ALJ's decision.

### Residual Functional Capacity

On August 31, 2004, Dr. Neil J. Maki, M.D., an orthopaedist, examined Aucoin after he

had injured his back.[6] Aucoin reported that he had an injury in 1988 when he was told he had

two abnormal discs, and that he was injured again in 2002. Aucoin's MRI showed an L5-S1 disc

herniation.[7] Dr. Maki diagnosed a herniated lumbar disc L5. Aucoin presented an old MRI from

2002 that showed an L5 disc herniation. Dr. Maki referred him to an orthopaedic surgeon,

---

[6] Tr. 246.

[7] Tr. 115.

Dr. Faissal Zahrawi, who informed Aucoin that, because of his longstanding problem, Aucoin's nerves could take a long time to recover.

Dr. Zahrawi performed an endoscopic microlumbar discectomy on September 7, 2004.[8] Dr. Zahrawi noted on September 20, 2004 that Aucoin's leg pain was gone.[9] He prescribed Lorcet and Soma.

About a month later, Aucoin began complaining of recurring back pain with headaches.[10] In October, 2005, Aucoin fractured his ankle which required surgery.[11] Aucoin testified he had had trouble with his ankle since his accident, but had not complained because it was not in the initial accident report and "they weren't going to do anything about it..[12] Aucoin testified he was being treated by a pain manager, Dr. Haydel, who prescribed Oxycontin, Percocet, and Lithium.[13] Aucoin stated that the medication "takes the edge off of the pain."[14] He testified that his pain was pretty much constant, causing him to have insomnia, become a hermit, and confine him to a recliner most of the day.[15] He became jittery, nervous and "goofy" when he takes his pain medication.[16]

_____

[8] Tr. 114.

[9] Id.

[10] Tr. 138.

[11] Tr. 167-182, 191-195.

[12] Tr. 297.

[13] Tr. 297.

[14] Tr. 298.

[15] Tr. 299.

[16] Tr. 304.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). Further, the ultimate issue of disability is reserved to the Commissioner. Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

Here, the ALJ weighed the medical evidence and Aucoin's testimony and determined that Aucoin retained the residual functional capacity to:

> lift/carry 20 pounds occasionally and 10 pounds frequently; could alternate at will sit, stand and walk positions; no stop, kneel, crouch or crawl; no climbing ladders, ropes or scaffolds; no work at unprotected heights or around moving machinery; capable of understanding, remembering and carrying out routine, repetitive work; and perform limited reading/writing as a condition of employment.[17]

Aucoin considers this to be "sedentary" work. This is inaccurate. The regulations define "light work" as the following:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Thus, the ALJ's finding is equivalent to a limited range of light work.[18]

---

[17] Tr. 20.

[18] In contrast, sedentary work:

> . . . involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

In reaching his reaching his RFC determination, the ALJ considered all of Aucoin's symptoms and also the medical evidence, the treatment sought and received, and the medication prescribed. Specifically, the ALJ cited the medical expert opinion of Dr. Steck, an orthopaedist, a May 10, 2005 FCE, Dr. Haydel, psychologist Scuddy Fontenelle, Ph.D., and Aucoin's medical testimony.

On December 22, 2004, neurosurgeon John C. Steck, M.D., examined Aucoin for his continued complaints of back pain.[19] Dr. Steck had reviewed Aucoin's postoperative MRI and opined that Aucoin's back pain was possibly due to persistent central disc herniation at the L-5 level. Aucoin's neurologic exam showed some bilateral S1 nerve root dysfunction. Dr. Steck recommended conservative care. Dr. Steck predicted that if Aucoin continued to have pain, further diagnostic tests would be considered and his surgical options would more than likely be more aggressive discectomy and probably an interbody fusion.

Dr. Steck subsequently informed Louisiana Workers Compensation Corporation (LWCC) on May 19, 2005 that Aucoin continued to be neurologically intact and was being treated with pain medications.[20] Dr. Steck discharged Aucoin because he believed that Aucoin was not a candidate for surgery at that time, and Aucoin did not desire further surgical care.

Dr. Steck referred Aucoin to the Physical Therapy Clinic.[21] The ALJ specifically noted the results of the physical therapist, Eddie Himel's, May 10, 2005 FCE. Aucoin testified that he was unable to complete the test because his blood pressure went up and that he was bedridden

---

[19] Tr. 223.

[20] Tr. 212-213.

[21] Tr. 214-221.

the days afterwards.  Notably, however, Himel recognized that Aucoin's main limiting factor was pain. Himel nonetheless was able to reach the conclusion that Aucoin could perform medium to heavy work, i.e., safe recommended lifting of 52 pounds occasionally, 24 pounds frequently and 10 pounds constantly. [22]

Aucoin relies on Dr. Steck's May 19 comments to the LWCC that he had difficulty in determining the FCE results.  However, Dr. Steck also concluded that, "[m]ore than likely the patient certainly can work at some capacity but after reviewing this I am not sure what that is.[23]

The ALJ did not take into consideration the RFC completed on January 5, 2005 by DDS physician Ellzey Beale who concluded that Aucoin could occasionally/frequently lift 10 pounds; stand/walk two hours in an 8-hour day; 6 six hours in a 8-hour workday and was unlimited as to push/pull.  Dr. Beale did not, however, examine Aucoin. *See* 20 C.F.R. §404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Moreover, the RFC was based in part on the findings of Dr. Raymond F. Taylor, MD. performed an consultative examination on December 13, 2004.[24]  Dr. Taylor's conclusion was that, at that time, Aucoin could only perform sedentary work because he was still recovering from surgery and had not reached maximum medical improvement.[25]  The May, 2005 FCE was obviously made after Aucoin had additional time to

[22] Tr. 221.

[23]r. 212.

[24] Tr. 135-139.

[25] Tr. 139.

recuperate. Thus, I find that the ALJ's decision to give more weight to the May FCE was not error.

In response to Aucoin's complaints of anxiety and depression, the DDS referred him for an evaluation Dr. Scuddy F. Fontenelle, III, Ph.D., a psychologist.[26] Dr. Fontelle diagnosed Adjustment Disorder with mixed disturbance of depression and anxiety. The ALJ considered Dr. Fontenelle's findings in detail. Dr. Fontenelle's opined that Aucoin obsessive focus on his chronic pain and personal limitation to where it ". . . limits capabilities to explore alternative[s] as well as adjust to a treatment program."[27]

Here, the medical evidence supports the ALJ's assessment of Aucoin's residual functional capacity. The ALJ generously interpreted the results of his FCE evaluation that he could perform medium/heavy work when he concluded Aucoin could only perform a limited range of light work. Aucoin's testimony is that no doctor has released him from work, including Dr. Haydel. To the contrary, the record does not show any documentation that Aucoin cannot perform work other for periods of time for recuperation from surgery. Dr. Steck originally opined the possible etiology of Aucoin's back pain was persistent central disc herniation at the L-5 level and he might have to have surgery. Subsequently, however, he concluded Aucoin was not a candidate for surgery at the time and Aucoin was neurologically intact. Accordingly, the undersigned finds that substantial evidence of record supports the ALJ's determination that Aucoin can perform a limited range of light work.

---

[26] Tr. 120-125.

[27] Tr. 22. ,

**Credibility**

In reaching his RFC determination, the ALJ concluded Aucoin's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ found:

> The claimant describes a limited lifestyle. He lives with family. He has trouble sleeping due to physical pain and stress. He is independent with personal care. He is independent with taking medications that consist of Oxycontin, Percocet, Neurotin, and Rozashia. (Exhibit 7E). The claimant alleges he does not drive although he did drive himself to the consulting psychological examination, *supra*. He watches television all day long. He sits in his recliner as he finds this is his most comfortable position. He uses a cane for ambulation that by his report was recommended by a physician. However, there is no evidence in the record that the cane is medically prescribed. The claimant reports that he has trouble getting along with others, unable to read, is "not good" with stress, and "not well" with handling routine changes. (Exhibit 1E and Testimony).

> Despite having only six years of education, the claimant was able to complete training in welding. He has history of work activity for at least 15 years as a welder. He was treated at St. Mary Mental Health as a young adult, by report, for anxiety/depression and currently prescribed Paxil, Prozac and Lexapro for anxiety/depression by his primary physician since at least January 2004. However, the claimant discontinued these medications stating that they had not been helpful. The claimant stopped working because of physical injuries.

> The undersigned finds the claimant's limited lifestyle is by choice. There is no objective evidence to support such limitations as contended by the claimant.[28]

Credibility determinations are generally the province of the ALJ, and his credibility evaluations are entitled to deference. *See* Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir.1991). The ALJ must consider subjective evidence of pain as testified to by the claimant. *See* Scharlow v. Schweiker, 655 F.2d 645, 648 (5th Cir.1981). In cases where uncontroverted medical evidence reveals a basis for subjective complaints of pain, an "ALJ's unfavorable credibility

---

[28] Tr. 23.

evaluation of a claimant's complaints of pain will not be upheld on judicial review" unless the

ALJ provides an articulated basis for discrediting the claimant's credibility.  Cook v. Heckler,

750 F.2d 391, 395 (5ᵗʰ Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5ᵗʰ Cir. 1987).  The ALJ

must indicate "the credibility choices made and the basis for those choices in resolving ... the

truthfulness of subjective symptoms and complaints." *See* Scharlow, 655 F.2d at 649.

As evidence of his credibility, Aucoin points the court to the FCE's finding that the

Waddell's Testing showed no symptom magnification. This is not persuasive because the

physical therapist ultimately concluded that Aucoin could perform medium/light work despite the

fact that Aucoin's main limiting factor was pain.

The ALJ's findings are further buttressed by medical evidence from Dr. Haydel, the pain

management specialist, who treated him during 2006.  From April, 2006 through February 13,

2007, Dr. Haydel prescribed pain medications and sleeping medication, including Oxycontin,

Lorcet, Parafon Forte, Ambien CR, Soma, Lyrica, Rozerem, and Quinene Sulfate.  The ALJ

noted Aucoin's testimony that he was independent with taking the medications, consisting at that

time of Oxycontin, Percent, Neurotin, and Rozerem.

Notably, on May 21, 2007, Dr. Haydel reported that the results of his examination were

that Aucoin had pain in his lower back with motion and some tenderness in the paraspinous

lumbar region with mild increased pain with right straight leg raise.[29]  However, Dr. Haydel

concluded that his neurologic exam was normal in both lower extremities.

Further supporting his credibility determination, the ALJ observed that Aucoin testified

that his wife had hired Binder and Binder Law Firm to represent him in his disability claim but

---

[29] Tr. 259.

he dismissed that representative because he wanted to hire a local attorney. However, this testimony was contradicted by a letter dated March 22, 2005 from the representative to the Administration that ". . . Mr. Aucoin has informed us that he is currently looking for work, and as such is not eligible for benefits due to not meeting the 12-month durational requirement."[30]

The undersigned finds that the ALJ supported his finding that Aucoin's testimony regarding the extent and limiting effects of his medication was not entirely credible. He found inconsistencies in his testimony. The medical records do not provide objective support for the his testimony that he is a hermit because of his pain, is confined to his recliner, and can walk only one hour in an eight-hour day and sit upright only two with pain medication.[31]

### Hypothetical question to the vocational expert

The ALJ considered the testimony of a vocational expert that a person with Aucoin's RFC could perform work in the economy.

Aucoin argues that the ALJ should not have relied on the vocational expert's testimony in response to a hypothetical questions that did not include concentration problems due to the serious side effects of medication, that he could not walk or stand more than one hour in an 8 hour day, and that he required the use of the cane.

The ALJ is only required to rely on the vocational expert's testimony in response to the hypothetical that includes the limitations *recognized by the ALJ* as being Aucoin's residual functional capacity. Bowling v. Shalala, 36 F.3d 431 (5th Cir. 1994).

In rejecting Aucoin's proposed limitations, the ALJ implicitly considered and rejected Aucoin's the extent of the side effects described by Aucoin. This is supported by the evidence.

---

[30] Tr. 46.

[31] Tr. 301.

Pertinently, Dr. Haydel's records consistently record "no side effects," with medication, with one complaint that Quinine Sulfate caused him nausea and vomiting. The medication was continued.

Further, the ALJ specifically noted that there no medical records showing that Aucoin was prescribed a cane.

As discussed above, the ALJ's RFC assessment is supported by substantial evidence of record. Thus, the ALJ's hypothetical posed to the vocational expert, which included the ALJ's RFC assessment, was proper. According the substantial evidence supports the ALJ's reliance on the vocational expert's testimony in response to that hypothetical. Accordingly, I find that the ALJ did not err in relying on the vocational expert's testimony in determining that Aucoin was not disabled because he could perform work which exists in significant numbers in the national economy.

### *Conclusion*

The court's function is to determine whether substantial evidence supports the ALJ's decision. As set forth above, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). Here, the medical evidence, considering Aucoin's symptoms, support the ALJ's finding that Aucoin retained the residual functional capacity to perform a limited range of light work. Further, the testimony of the vocational expert supports the ALJ's determination that Aucoin can perform work in the national economy and is not disabled. The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5ᵗʰ Cir.  1996).**

Signed at Lafayette, Louisiana, on February 19, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)